No. 22-181

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

---

## IN RE: MARRIOTT INTERNATIONAL CUSTOMER DATA SECURITY BREACH LITIGATION

---

## REPLY OF DEFENDANT MARRIOTT INTERNATIONAL, INC. IN SUPPORT OF PERMISSION TO APPEAL UNDER RULE 23(F)

---

*On Appeal from the Order Granting Class Certification, Entered May 3, 2022, by the United States District Court for the District of Maryland, Civil Action No. 19-md-2879*

---

Daniel R. Warren
Lisa M. Ghannoum
Dante A. Marinucci
Kyle T. Cutts
BAKER & HOSTETLER LLP
127 Public Square
Suite 200
Cleveland, OH 44114
Tel: 216-621-0200

Gilbert S. Keteltas
BAKER & HOSTETLER LLP
1050 Connecticut Ave. NW
Suite 200
Washington, DC 20036
Tel: 202-861-1530

Lindsay C. Harrison
Matthew S. Hellman
Zachary C. Schauf
Kevin J. Kennedy
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
Tel: 202-639-6000
mhellman@jenner.com

*Counsel for Defendant-Petitioner Marriott International, Inc.*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to <u>Federal Rule of Appellate Procedure 26.1(a)</u>, Defendant-Petitioner Marriott International, Inc. certifies that Marriott International, Inc. (NASDAQ: MAR) is a publicly owned company and that no public corporation or entity owns 10% or more of Marriott International, Inc.'s stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................... C-1

TABLE OF AUTHORITIES.............................................................. ii

INTRODUCTION ............................................................................1

ARGUMENT....................................................................................2

I.    The Court Should Grant Review To Vindicate The Rule That Class Waivers Preclude Class Litigation.....................................2

II.   The Court Should Grant Review To Vindicate The Rule Classes May Not Be Certified When Ascertaining Standing And Membership Requires Millions Of Mini-Trials.........................5

III.  Review Is Warranted To Vindicate *Comcast*'s Rule That Class Certification Requires A Viable Classwide Damages Model. ..............9

IV.  Review Is Warranted To Vindicate The Principle That District Courts May Not Use Rule 23(c)(4) To Eviscerate Rule 23's Other Requirements. ..........................................................13

CONCLUSION ...............................................................................13

CERTIFICATE OF COMPLIANCE..................................................15

CERTIFICATE OF SERVICE ........................................................16

# TABLE OF AUTHORITIES

CASES

*Ackal v. Centennial Beauregard Cellular L.L.C.*, 700 F.3d 212 (5th Cir. 2012) ....................................................................7

*Adams v. Mills*, 286 U.S. 397 (1932).......................................5

*In re Asacol Antitrust Litigation*, 907 F.3d 42 (1st Cir. 2018) .......................7

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ...........................2, 9, 10

*In re Delta/AirTran Baggage Fee Antitrust Litigation*, 317 F.R.D. 675 (N.D. Ga. 2016) ...........................................8

*Earl v. Boeing Co.*, 21 F.4th 895 (5th Cir. 2021)...........................2, 3

*Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018) ........................4

*EQT Production Co. v. Adair*, 764 F.3d 347 (4th Cir. 2014) ...........1, 2, 3, 5, 8

*Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349 (3d Cir. 2013) .......................2, 9

*Kern v. Siemens Corp.*, 393 F.3d 120 (2d Cir. 2004) ........................7

*Spotswood v. Hertz Corp.*, No. CV 16-1200, 2019 WL 498822 (D. Md. Feb. 7, 2019) ...........................................8

*State Farm Mutual Automobile Insurance Co. v. Elegant Massage, LLC*, No. 21-255, 2021 WL 4202678 (4th Cir. Sept. 2, 2021) ...................................................7

*In re Titanium Dioxide Antitrust Litigation*, 962 F. Supp. 2d 840 (D. Md. 2013)..............................................4

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)...................... 9-10

## Other Authorities

Sungjin Cho et al., *Optimal Dynamic Hotel Pricing* (2018) ..........................12

Aaron Schaffer, *The Marriott Lawsuit Explores The Conundrum Of How To Value Stolen Data*, Wash. Post (May 27, 2022), https://www.washingtonpost.com/politics/ 2022/05/27/marriott-lawsuit-explores-conundrum-how-value-stolen-data/ ........................................................................................1

## INTRODUCTION

One of the largest data-breach class actions ever—covering 20 million plaintiffs in the bellwether classes alone—stands poised to proceed in square contravention of Rule 23.  Plaintiffs, whose counsel recently described their damages theory as "incredibly novel,"[1] barely defend the substance of the decision below.  They say the errors are not "likely to matter to other cases," Opp. 1, yet have no answer to how the decision below conflicts with myriad decisions of this Court and others considering similar issues.  Indeed, the Chamber of Commerce and National Retail Federation have urged this Court to grant review precisely because of the importance of the decision below.

Alternatively, Plaintiffs say the errors are not "dispositive" because the district court may later "modify (or even decertify) the classes" or, on remand, might grant certification on different grounds.  *Id.*  But a decision in Marriott's favor is "likely" to decide whether any class proceeds.  *EQT Prod. Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014).  And the gist of

---

[1] Aaron Schaffer, *The Marriott Lawsuit Explores The Conundrum Of How To Value Stolen Data*, Wash. Post (May 27, 2022), https://www.washingtonpost.com/politics/2022/05/27/marriott-lawsuit-explores-conundrum-how-value-stolen-data/.

Plaintiffs' position—that courts may use the possibility of later decertification to avoid rigorous Rule 23 scrutiny—badly conflicts with the Supreme Court's mandate that plaintiffs must "affirmatively demonstrate," at certification, Rule 23 compliance. *Comcast v. Behrend*, 569 U.S. 27, 33, 35 (2013). Indeed, this Court and others routinely grant Rule 23(f) petitions even though district courts might revisit their analysis, or decertify, on remand. *E.g.*, *EQT*, 764 F.3d at 360 ("On remand, the district court should reconsider the ascertainability issues"); *Earl v. Boeing Co.*, 21 F.4th 895 (5th Cir. 2021); *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 359 (3d Cir. 2013). The Court should do so here and resolve the important issues this case implicates.

## ARGUMENT

### I. The Court Should Grant Review To Vindicate The Rule That Class Waivers Preclude Class Litigation.

When plaintiffs have agreed not to sue as a class, courts may not certify classes of those individuals. Marriott cited cases from district courts in Texas, Florida, Washington, California, and the Ninth and Eleventh Circuits, all holding that certification must be denied when plaintiffs seek to certify classes despite signing class waivers. Pet. 13-14. Plaintiffs respond that many of these cases are unpublished. Opp. 9. But certification decisions

are often unpublished, especially when they turn on an uncontroversial rule, like the rule that contracts to forego class litigation are enforceable. The sheer number of such decisions, moreover, underscores the "general importance" of the question presented and the need for this Court's guidance. *EQT*, 764 F.3d at 357.

Tellingly, just one district-court decision follows Plaintiffs' position—and the Fifth Circuit certified that decision for review under Rule 23(f) (and stayed discovery given the defendants' "substantial likelihood of success"). *Earl*, 21 F.4th at 900. The Fifth Circuit was right to do so, and this Court should do the same.

Plaintiffs' meritless assertion that the waiver's "enforceab[ility]" is in doubt, Opp. 1-2, does not render this issue less dispositive or provide reason to deny review. Plaintiffs did not dispute enforceability in their briefs below. Nor do they develop any enforceability argument in this Court. And for good reason: As Marriott has shown, such waivers are enforceable. Pet. 15.

Plaintiffs fare no better claiming that this case is a "poor candidate" for review because Marriott supposedly forfeited its waiver argument. Opp. 10. As Plaintiffs admit, Marriott raised this argument in its answer. *Id.* And as courts in this Circuit have recognized, the "proper stage" to raise a class

3

waiver is at certification; such arguments are "timely," and "Defendants [do] not waive[] their rights to enforce" such waivers by raising them "at class certification." *In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840, 853 (D. Md. 2013).  Plaintiffs cite no law—and to Marriott's knowledge, none exists—requiring defendants to not only raise, but actively litigate, such waivers earlier.

Plaintiffs weakly contend that Marriott has not proven that the court's "doubtful certification ruling" will "compel [it] to abandon a meritorious claim or defense" and settle.  Opp. 10.  The point of the Supreme Court's Rule 23 jurisprudence is that wrongful certification "can unfairly 'plac[e] *pressure* on the defendant to settle even unmeritorious claims.'"  *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1632 (2018) (emphasis added).  As Plaintiffs effectively admit, unless this Court grants review, the district court's certification will nullify Marriott's contractual right not to litigate against Plaintiffs on a classwide basis.  The Court should grant the petition to avoid that unfair and unprecedented result.

II.   The Court Should Grant Review To Vindicate The Rule Classes
      May Not Be Certified When Ascertaining Standing And
      Membership Requires Millions Of Mini-Trials.

On ascertainability, Plaintiffs' response is remarkable for what it does
not dispute.   Plaintiffs do not dispute that individuals who received
reimbursement for stays lack standing. Pet. 16.[2]  Plaintiffs do not dispute
that, accordingly, Marriott has a right to contest *at trial* the question of "who
bore the economic burden" of hotel stays.  App. 11.  And Plaintiffs do not
identify any "administratively feasible" method of adjudicating that
question, *EQT*, 764 F.3d at 358, much less one a classwide jury-trial can
resolve.  Pet. 15-18.

Nor can Plaintiffs dispute these points:  The class definition requires
proving a negative—that individuals were not reimbursed.    No
administratively feasible process can sort out whether tens of millions of
potential class members received reimbursements from any manner of
sources.  Pet. 17-18.  As the amicus brief from the Chamber of Commerce

---

[2] Plaintiffs thus cannot gain from their citation to a 90-year-old decision for
the proposition that "the fact of subsequent reimbursement" generally is not
"of any concern to the wrongdoer[]."  *Adams v. Mills*, 286 U.S. 397, 407
(1932).  Reimbursement here determines whether Plaintiffs have Article III
standing, as the district court correctly held (and as Plaintiffs do not
dispute).  App. 9-11, 69-71.  It is emphatically Marriott's concern whether its
litigation counterparties have standing.

and the National Retail Federation explains, the district court's approach improperly "put[s] … defendants in the situation of litigating against, or attempting to settle with, an unknown and indeed unknowable group." Chamber Br. 7.

This fatal flaw, moreover, is dispositive of certification. The problem is not just that Plaintiffs have failed to *devise* an administratively (and constitutionally) feasible method of assessing reimbursement in a Rule 23-compliant trial. No such method exists. If certification was improper on the record below—and it was—no amount of reconsideration can fix it.

Plaintiffs' response tries to hide the ball. They say that the "NDS database" may "contain[] information regarding whether a customer was reimbursed"; that Marriott has only produced the NDS database for "the bellwether plaintiffs"; and that further discovery on the NDS database will ensue. Opp. 11-12. The NDS database, however, was Starwood's "guest information database." App. 3. It contains "the payment card used" to book reservations. App. 16. Starwood never collected or stored information on whether its guests *received reimbursement*, via some avenue or another, for the stays they booked. Plaintiffs know that the NDS database does not contain this information—because they have the "NDS database for … the

bellwether plaintiffs." Opp. 12. Yet they do not cite any example of how that database could be used to determine whether any plaintiff bore the ultimate economic burden for a stay.

That leaves only Plaintiffs' argument that members can "self-certif[y]" via affidavits. Opp. 11. But as Marriott showed, and Plaintiffs do not dispute, such affidavits would be "inadmissible hearsay at trial," and regardless, Marriott would be entitled to contest any such claims. *In re Asacol Antitrust Litig.*, 907 F.3d 42, 52-53 (1st Cir. 2018). Plaintiffs do not explain how a trial in this case can comply with Rule 23 when Article III and the Seventh Amendment entitle Marriott to develop and present plaintiff-specific evidence on reimbursement for more than 20 million individuals. Pet. 18-19 & n.4.[3]

---

[3]    Indeed, self-certification here creates—in practical effect—an impermissible "opt in" class. Courts have correctly recognized that Rule 23 permits "opt out" classes but not "opt in" classes. *E.g.*, *Kern v. Siemens Corp.*, 393 F.3d 120, 125-26 (2d Cir. 2004); *Ackal v. Centennial Beauregard Cellular L.L.C.*, 700 F.3d 212, 21-14 (5th Cir. 2012); *cf. State Farm Mut. Auto. Ins. Co. v. Elegant Massage, LLC*, No. 21-255, 2021 WL 4202678, at *1 (4th Cir. Sept. 2, 2021) (reversing "court's *sua sponte* certification of an 'opt-in' … class"). And when individuals can become class members only if they fill out "questionnaires" or "proofs of claim," the class becomes "a *de facto* 'opt in'" class. *Kern*, 393 F.3d at 125 (citing sources). That is just what the district court's self-certification affidavits do. Because Marriott information cannot prove that individuals *did not* receive reimbursement via some

Given all that, Plaintiffs fail to answer the conflict between the decision below and others that have found "administrative ascertainability" absent in similar circumstances. As Plaintiffs admit, *EQT* found ascertainability lacking because the authoritative data source there—the "ownership … schedules"—did not resolve the ownership issue that defined class membership. Opp. 12-13; *see EQT*, 764 F.3d at 359. That is the same as here, where the NDS database does not resolve the "economic burden" issue that defines class membership. App. 11. Likewise, the "gloss[ing] over" of similar payment issues defeated certification in *Spotswood v. Hertz Corp.*, No. CV 16-1200, 2019 WL 498822, at *7-8 (D. Md. Feb. 7, 2019). But below, the district court followed *Earl*—which, again, the Fifth Circuit has since taken up under Rule 23(f)—and other decisions certifying classes despite similar payment issues. *See In re Delta/AirTran Baggage Fee Antitrust Litig.*, 317 F.R.D. 675, 698 (N.D. Ga. 2016).

Plaintiffs' reliance on caselaw concerning "conditional class certification," Opp. 12, underscores that they cannot actually *defend* the certification decision. The court emphasized that its order "should not be

account or in cash, the district court will have to demand affidavits from every class member attesting that they did not receive reimbursement.

construed as conditional certification." App. 18 n.17. It did so because the "2003 amendments to Rule 23 deleted the provision that explicitly enabled courts to conditionally certify class actions," and courts have held that conditional certification is impermissible. *Id.* Nor can courts achieve the same result by relying on potential decertification to avoid the "rigorous analysis" Rule 23 demands, which requires plaintiffs to "affirmatively demonstrate," at certification, compliance with Rule 23. *Comcast*, 569 U.S. at 33, 35. *See Hayes*, 725 F.3d at 358 ("[C]aveat that the class can always be decertified" does not excuse failure to satisfy Rule 23).

## III.  Review Is Warranted To Vindicate *Comcast*'s Rule That Class Certification Requires A Viable Classwide Damages Model.

Under *Comcast*, it was Plaintiffs' burden to demonstrate, prior to certification, that "damages are capable of measurement on a classwide basis." 569 U.S. at 34. Plaintiffs failed to meet this requirement. Their expert's model turned on an assumption—co-movement of prices—that he never tested and that Marriott's expert showed was false.

Plaintiffs begin by offering a watered-down account of what *Comcast* requires. They claim it was enough that Dr. Prince's model *purported* to "match" their classwide theory of overpayment damages. Opp. 17. But Rule 23 "does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v.*

*Dukes*, 564 U.S. 338, 350 (2011). Rather, Plaintiffs "cannot show Rule 23(b)(3) predominance" unless they "affirmatively demonstrate" their model is "capable" of measuring classwide damages. *Comcast*, 569 U.S. at 33-34. *Comcast* requires more than an attempt to measure damages; it demands proof that damages can be calculated.

Perhaps sensing the inadequacy of their proof of co-movement below, Plaintiffs' primary argument is that appellate review is premature because they *might* be able to prove co-movement after a seven-step process of further discovery and expert testimony. Opp. 15. But even leaving aside the obvious (and fatal) point that Plaintiffs' supposed need for further discovery to support their model means that certification never should have been granted, further discovery will be *incapable* of establishing the reliability of Dr. Prince's model.

Plaintiffs claim they need records from Marriott's NDS database. But they already have that data for the bellwether classes. Providing more of it will not change anything: that database contains the prices paid for Marriott stays; it does not contain data about the prices charged by Marriott's competitors. It thus cannot shed light on whether co-movement (*i.e.*, the extent to which Marriott's prices moved in tandem with those of its

competitors) exists. In fact, as Marriott's expert demonstrated, the co-movement assumption could be tested (and was shown to be false) using other competitor data that was available to Dr. Prince. Dkt. 985 ¶ 9. The reason Dr. Prince could not prove co-movement was not that he lacked relevant data, but that the data disproved co-movement.

When Plaintiffs finally attempt to defend the substance of Dr. Prince's analysis, they offer the make-weight that Dr. Prince ultimately backed off his claim that he would only need to run his model a single time for each market—it was possible a "few" runs would suffice. Opp. 18. But as Marriott has explained: "if Dr. Prince's co-movement premise is wrong," which it is, "then his model will indisputably require an impractically large number of runs, not just a 'few.'" Pet. at 22 n.5.

Plaintiffs also repeat the red herring that Dr. Prince's testimony should be credited because he "tested" his model. Again, as Marriott has explained, "Dr. Prince never tested his co-movement assumption; he ran his model *assuming* that co-movement existed." Pet. at 24. One cannot "test" a proposition by assuming its correctness. Plaintiffs do not dispute that core point.

Finally, Plaintiffs contend that Dr. Prince's assumption of co-movement is reliable because he endeavored to mimic Marriott's own proprietary system of setting room prices. Opp. 19. That is a mischaracterization. Dr. Prince's approach approximated certain features of Marriott's system, but he never attributed his co-movement assumption to that system. *See* Dkt. 905-4. For good reason: Marriott's pricing witness testified that Marriott's pricing tactics do *not* consistently produce co-movement. Dkt. 985 ¶ 18 n.22. Tellingly, the "one academic paper" Dr. Prince relied upon, Opp. 19, noted that the limited evidence of co-movement it found came when prices were set by a hotel manager at a single hotel who "typically ignore[d]" the prices recommended by the hotel's revenue management system algorithms. *See* Sungjin Cho et al., *Optimal Dynamic Hotel Pricing* 75 (2018).

Plaintiffs thus are contending that Dr. Prince's co-movement assumption was justified because he was mimicking Marriott's pricing (which does not employ co-movement) and because he relied on an academic article (which confirmed that pricing systems like Marriott's do not lead to co-movement). That is no support at all. And it is no surprise that when Marriott's expert tested for co-movement, she found the data disproved it.

The Supreme Court was clear in *Comcast* that certification is improper where the plaintiff has failed to come forward with a model capable of calculating damages. Certification here flouted that command.

## IV. Review Is Warranted To Vindicate The Principle That District Courts May Not Use Rule 23(c)(4) To Eviscerate Rule 23's Other Requirements.

Marriott joins the arguments of Accenture showing review is warranted to address the recurring and important issue of whether Rule 23(c)(4) permits courts to revive classes that fail predominance by carving out individual elements of a single claim and creating classes consisting largely of individuals who lack standing.

## CONCLUSION

The petition should be granted.

Dated: June 21, 2022                    Respectfully Submitted,

Daniel R. Warren                        /s/ Matthew S. Hellman
Lisa M. Ghannoum                        Lindsay C. Harrison
Kyle T. Cutts                           Matthew S. Hellman
Dante A. Marinucci                      Zachary C. Schauf
BAKER & HOSTETLER LLP                   Kevin J. Kennedy
127 Public Square                       JENNER & BLOCK LLP
Suite 200                               1099 New York Avenue, NW
Cleveland, OH 44114                     Suite 900
Tel: 216-621-0200                       Washington, DC 20001
                                        Tel: 202-639-6000
Gilbert S. Keteltas
BAKER & HOSTETLER LLP
1050 Connecticut Ave. NW
Suite 200
Washington, DC 20036
Tel: 202-861-1530

*Counsel for Defendant-Petitioner Marriott International, Inc.*

# CERTIFICATE OF COMPLIANCE

Pursuant to <u>Fed. R. App. P. 32(g)(1)</u>, Petitioners, by and through their counsel of record, hereby certify that this petition complies with the type-volume limitations of <u>Fed. Rule App. P. 5(c)(1)</u> because this brief contains 2,573 words, excluding the parts of the petition exempted by <u>Fed. R. App. P. 32(f)</u>.

I further certify that this petition complies with the typeface requirements of <u>Fed. R. App. P. 32(a)(5)</u> and the type style requirements of <u>Fed. R. App. P. 32(a)(6)</u> because this petition has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in Century Expanded LT Standard 14-point font.


Dated: June 21, 2022                    /s/ Matthew S. Hellman

## CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2022, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Fourth Circuit using the appellate CM/ECF system.

I also certify that on June 21, 2022, I caused a copy of the foregoing to be delivered via ECF to the following:

Amy E. Keller
DICELLO LEVITT
GUTZLER LLC
Ten North Dearborn Street
6th Floor
Chicago, IL 60602
akeller@dicellolevitt.com

James J. Pizzirusso
HAUSFELD LLP
888 15th St. NW, Ste 300
Washington, DC 20006
jpizzirusso@hausfeld.com

Megan Jones
HAUSFELD LLP
600 Montgomery Street, Ste 3200
San Francisco, CA 94111
mjones@hausfeld.com

MaryBeth V. Gibson
THE FINLEY FIRM, P.C.
3535 Piedmont Rd, Bldg. 14,
Ste 230
Atlanta, GA 30305
mgibson@thefinleyfirm.com

Ariana J. Tadler
TADLER LAW LLP
One Penn Plaza, 36th Floor
New York, NY 10119
atadler@tadlerlaw.com

Jason Lichtman
LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
jlichtman@lchb.com

Andrew N. Friedman
COHEN MILSTEIN
SELLERS & TOLL PLLC
1100 New York Avenue, NW,
Ste 500
Washington, DC 20005
afriedman@cohenmilstein.com

Norman E. Siegel
STUEVE SIEGEL
HANSON LLP
460 Nichols Road, Ste 200
Kansas City, MO 64112
siegel@stuevesiegel.com

Timothy Maloney
Veronica Nannis
JOSEPH GREENWALK &
LAAKE, P.A.
6404 Ivy Lane, Ste 400
Greenbelt, MD 20770
tmaloney@jgllaw.com
vnannis@gjllaw.com

Daniel Robinson
ROBINSON CALCAGNIE, INC.
19 Corporate Plaza Drive
Newport Beach, CA 92660
drobinson@robinsonfirm.com

Gary F. Lynch
CARLSON LYNCH LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
glynch@carlsonlynch.com

James Ulwick
KRAMON & GRAHAM PA
1 South Street, Ste 2600
Baltimore, MD 21202
julwick@kg-law.com

Craig S. Primis, P.C.
Erin N. Murphy
Devin S. Anderson
Emily M. Lon
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 389-5000
cprimis@kirkland.com

Dated: June 21, 2022                    /s/ Matthew S. Hellman